# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

---

## CENTRAL GRAND DIVISION.

### JANUARY TERM, 1872.

---

EDMUND TOWNSEND *et al.*

*v.*

WILLIAM RADCLIFFE *et al.*

1. COMMISSION OF SURVEYORS—*have not judicial powers.* A commission appointed under section 2 of the "Act to provide for the permanent survey of lands," of March 25, 1869, may examine witnesses under oath and report their finding to the court, but their report is not binding on parties as to disputed boundaries.

2. It is only the approving order of the court, upon the hearing of parties and formal trial, that can give effect to the report and conclude the rights of those having interest.

3. The rights of parties to trial by court and jury according to the usual course of law, being secure, the act in question is not unconstitutional.

4. EVIDENCE. The reports of commissioners are only *prima facie* evidence, and may be controverted and the witnesses subjected to cross-examination, as in other cases.

APPEAL from the Circuit Court of Madison county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Upon application to the circuit court of Madison county, under section 2 of the act of 1869 to provide for the permanent survey of lands, commissioners were appointed, who, on completing their survey and the examination of witnesses, made report to the court. Dousman, one of the parties affected by the survey, and whose lands were diminished by a change of boundary, filed objections to the report, on the ground that the proceeding divested him of lands without due process of law. The court, refusing to modify, change or alter the report, or to cause the commissioners to do so, or to appoint a new set of commissioners, dismissed the petition, on the ground that the law authorizing the proceeding was unconstitutional and void. The parties seeking the survey took exceptions, and the case comes to the Supreme Court upon stipulations.

Mr. A. W. METCALF, for the appellants.

Mr. DAVID GILLESPIE, for the appellees.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

This case brings before us for construction the act entitled "An act to provide for the permanent survey of lands," passed March 25, 1869.

The first section of the act provides that the owners of adjacent tracts of land, who desire to establish permanently the lines and corners, may enter into a written agreement for

a survey, by some surveyor to be mutually agreed upon, and that the written agreement, with the plat of the survey when made, shall be recorded in the recorder's office, and shall be forever binding upon the parties and all persons claiming under them. To this section there can be no objection.

The second section provides that when an amicable agreement can not be made under the first section, one or more of the parties interested, first giving notice to the owners of adjacent tracts, may make an application to the circuit court of the county where the lands are situated for the appointment of "a commission of surveyors" to permanently establish the corners and boundaries.

The third section provides that the court, on filing the petition and proof of notice, shall appoint a commission of three disinterested surveyors, who thereupon shall make the survey and a plat thereof, and report their proceedings, with the plat and notes of the survey, to that or the next term of the court. The members of this commission are not themselves required to be sworn, but they are authorized, in the language of the act, "to administer an oath and take the evidence, and incorporate the same with their survey, of any person who may be able to identify any original government or other legally established corner or witness thereto, or government line tree or other noted object, and all stone corners or other monuments that have been in existence over twenty years and recognized as original government monuments by the adjoining proprietors."

Section 4 provides that on the filing of said report, any person whose interests may be affected by the survey may file objections, which the court shall hear and determine, and shall enter an order or judgment approving or rejecting said report, or modifying and amending the same, or referring it back for correction, or the court may set aside the commission and their proceedings and appoint a new commission, which shall proceed *de novo.* The section further provides that the survey, as finally approved by the court, with its boundaries

and corners, shall be considered, if not appealed from within thirty days, "permanently and unalterably established."

The object sought to be accomplished by this act is evidently the prevention of future disputes and litigation, by the definite ascertainment of land boundaries while the evidence upon which they may depend is yet comparatively certain and attainable. The accomplishment of this end is desirable, but it must be effected by constitutional methods. The legislature may very properly authorize parties to institute legal proceedings of this character, and authorize the court to appoint a commission to make a survey and report it to the court. It can also authorize the court to pronounce a judgment establishing such survey as the court may finally approve, and can make that judgment conclusive upon parties and privies. To the general plan and object of the act there can be no possible objection.

There are, however, in the act certain provisions, which, if they were to be construed as meaning what counsel for appellants contend they mean, would be plainly unconstitutional.

The law authorizes the commission of surveyors not merely to make a survey and plat and report them to the court, but to administer oaths and take testimony as to monuments and corners, or the recognition, by the adjacent proprietors, of certain objects as government monuments, and to incorporate this evidence in their report.

It is contended by counsel for appellants that the court can hear no evidence to impeach the report made by the commissioners; that the only evidence intended to be heard is that taken by them, and that, deciding only by the report itself and the evidence embodied therein, the court, upon objections made, is either to adopt, reject or modify it. It is of course claimed, as the result of this construction, that a trial by jury can not be had.

It hardly seems necessary to enter into discussion in order to show that if this was the intention of the legislature, that

body exceeded the limits of its power. The constitution provides that no freeman shall be deprived of his life, liberty or property, but by the judgment of his peers or the law of the land. The meaning of this prohibition has been settled in almost numberless cases. It is, that no person shall lose life, liberty or property, except by trial and judgment according to the course and usage of the common law. The constitution further provides that the right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy. It also vests the judicial power of the State in certain enumerated courts established by the constitution, and certain local courts which the legislature may establish.

This act, if construed as counsel for appellants contend it should be, would violate the spirit of all these constitutional provisions. The ascertainment of the true boundaries of a tract of land is the determination of a question of fact, and where it has become a matter of dispute between rival claimants, it is as much a matter of judicial cognizance as any issue of fact that was ever submitted to a jury. A survey is simply a piece of evidence—a means of ascertaining where the true boundaries are. But there may be many different surveys. The experts may disagree. The government monuments may be a matter of dispute, as contemplated by this act, and thus the very basis of survey a question of conflicting evidence. If, then, the line between A and B is in controversy, and A claims that he is the rightful owner, by an accurate survey, of a strip of land within the inclosure of B, it is very clear that before B can be required to surrender his possession, or before it can be adjudged illegal, he has a constitutional right to insist that this question of fact shall be submitted to a court and jury, and that he shall have the privilege of cross-examining the witnesses whose survey is adduced against him, and of showing, by such cross-examination, how much credit their survey should receive. His rights can not be concluded because these commissioners have made

a survey based upon the testimony, as to government monuments, of witnesses whom he has had no opportunity to cross-examine or controvert. Even if he had notice and appeared with his witnesses, this commission, in holding its inquisition as to the facts, would necessarily be obliged to decide upon all the questions of evidence that might arise, and would be exercising a judicial function with which such a commission can not be clothed. The act, however, does not require notice to the parties of the time and place where the commissioners are to take the testimony.

If the construction contended for is the necessary construction of this law, we think it would be difficult to find a legislative act more completely setting at naught the elementary principles which should lie at the foundation of all proceedings instituted for the purpose of determining conflicting claims. The right to be heard in defense of one's property, to cross-examine witnesses and introduce opposing testimony, although not in terms guarantied by the constitution, is, nevertheless, secured by the comprehensive clause to which we have referred, because it is a right necessarily inhering in judicial proceedings. We are, therefore, of opinion that the board of surveyors can hold no inquisition for the purpose of ascertaining facts, and by their report make it necessary for any party to the record to disprove them, because their finding upon the facts, although not final, is in the nature of a judicial function which they can not exercise, and if they could, such function should be exercised in a mode not violative of any principle of judicial procedure.

We can not enforce the act if it is to be construed as claimed by counsel for appellants, and such a construction is not necessary. One can be adopted which will leave the act in full force and well adapted to accomplish the intent of the legislature. The proceeding can be instituted in the manner pointed out by the act. The surveyors can be appointed, and after having made their survey with whatever accuracy they can attain, they may make their report. If no objections are

made, the court can enter an order of approval, as the parties to the record, who have had due notice, would in such case be presumed to acquiesce in its correctness. If objections are made, denying its correctness, an issue of fact is thus formed, upon which any party to the record would have the right to demand a jury, and on the trial, whether before court or jury, the survey reported by the commissioners could be received in evidence only in connection with and as a part of the testimony given by one or all of them as witnesses. It would have no official sanctity, but must stand or fall upon the testimony of the persons who made it, taken in connection with all the other evidence in the case.

In the case at bar the circuit court, upon objections made to the report, tried the issues and found them for defendants. It then refused to modify the report or to require the commissioners to do so, or to appoint a new commission, but dismissed the proceeding on the ground that the act was void. In dismissing the proceeding, we think the court erred. The object sought by the legislature may be accomplished in the mode indicated, and it is the duty of the court to give the act such a construction as will harmonize it with the constitution and still substantially accomplish the intent of the legislature.

The court should have modified the report or should have required this to be done, or should have appointed a new commission.

The judgment is reversed and the cause remanded.

*Judgment reversed.*