# DANIEL MARTZ *et al.*

## *v.*

# HATTIE WILLIAMS *et al.*

1. BOUNDARY, DISPUTED OR LOST—*no power to establish new corners and lines.* The act of March 25, 1869, entitled "An act to provide for the permanent survey of lands," confers no power on the commissioners appointed under its provisions to establish new corners or run new boundary lines, but simply to re-establish those once established by the United States, and by which they sold the same to the several purchasers.

2. The duty of such commissioners, when appointed, is to re-establish lost corners and boundaries; to make them in the same places and at the same distances as they had been originally established by the government surveyors. In so doing, the returns and original field notes returned by the government surveyors should be their main guide, and they should also be guided by corners in the same township, recognized as the original government corners. Such corners must control both courses and distances.

3. In re-establishing lost corners and boundary lines, under the statute, the commissioners can not disregard recognized government corners yet standing in the same township, and as section lines are frequently deflected, the true corners must be tested by east and west distances from them as well as by north and south distances, as given in the original field notes.

4. SAME—*dividing overplus of distance.* Where the distance between recognized government corners as originally established overruns that given in the field notes of the government survey, it should be divided *pro rata* between the intervening sections, and any deficiency should be apportioned in the same manner.

APPEAL from the Circuit Court of Mason county; the Hon. CHARLES TURNER, Judge, presiding.

This was a proceeding instituted by Hattie Williams, Richard R. Simmons, Jacob Nease, John Barndollar, Charles Bastian, Jacob Dreshler, William Kessler, Mark A. Kessler, James Kessler, Alfred Biggs, George Biggs, Eunice E. Stout, James G. Samms, and Nicholas Steiging, against Daniel Martz, Amos Heator, John Landwher, Harman Kellersman, William Trout and John Hurst, to establish permanently certain lines

and corners of the lands of the petitioners under the statute of 1869, relating to lost and disputed boundaries. The facts of the case bearing upon the decision are stated in the opinion of the court.

Messrs. DEARBORN & CAMPBELL, for the appellants.

Messrs. FULLERTON & ROGERS, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

At the August term 1871, of the Mason circuit court, appellees filed their petition against appellants and others, under the second section of an act entitled "An act to provide for the permanent survey of lands," approved March 25, 1869, alleging in their petition that the corners and boundaries to certain lands in township twenty-one (21) north, of range seven (7) west, in Mason county, had been lost, destroyed, and were in dispute, and praying that the same may be permanently established. Due notice of filing the petition was served on the appellants. On the hearing, the court appointed John R. Faulkner, Francis P. Powell and Hobert Hamilton commissioners to establish permanently the corners and boundaries of the described lands. Hamilton declining to serve, the court, at the next October term, appointed James Boggs in his place.

On the 24th of November, 1871, the commissioners, Faulkner, Powell and Boggs, filed their report, with a plat of their survey. To this report and plat appellants then and there filed their objections, which the court disallowed, and thereupon, at the November term, 1872, entered a decree that the report be approved, and that the lines surveyed and the corners established thereby be taken and held as the true lines and corners, according to the report.

From this decree appellants bring the record to this court, and assign various errors.

We have carefully examined the testimony in the record, and the report and plat of survey, and from them we are satisfied that all the errors can be disposed of by considering one question, and that is, have the survey in question, as made by the commissioners, and the report and plat returned by them, been made in compliance with the law under which the proceedings were had.

Section 2 of the act of 1869, under which these proceedings were had, provides the manner by which to re-establish corners and boundaries lost, destroyed or in dispute. It nowhere confers power on the commissioners to establish new corners or run new boundary lines, but simply to re-establish those once established by the United States, the original proprietors, and by which corners and boundary lines they sold and conveyed the same to the several purchasers. The duty of these commissioners, then, was to re-establish lost corners and boundaries; to make them in the same places and at the same distances as they had been originally established by the government surveyors. From the evidence in the record, and from the report and plat returned by the commissioners, we are satisfied they have misapprehended the statute, and not been governed by its plain spirit and intent. They do not seem to have paid much attention to the returns and original field notes returned by the government surveyors, which, we think, should have been their main guide in seeking to reestablish a corner or boundary line.

It is admitted by all the surveyors who testified in the cause, that the following corners had been recognized by them as original government corners, namely: corner between sections two and three, between three and four, and between four and five, on the north line of the township; also between six and seven on the west line of the same, and the corners between sections two and three, ten and eleven, between seventeen, eighteen, nineteen and twenty, and between eighteen and nineteen, also on the west side of the township. And it was further proved, that the corners of sections thirty-one and

thirty-two, and thirty-two and thirty-three, and between thirty-three and thirty-four, on the south line of the township, were known and recognized as the true government corners. It was further admitted by all the surveyors, and it has been so held by this court, that, when original corners can be found, they must control both courses and distances. *Colvin et al.* v. *Fell,* 40 Ill. 418.

The duty of these commissioners being simply to re-establish corners and boundary lines, it was imperative upon them to be guided by these original corners as made by the government surveyors and by the field notes returned by them. They do not appear to have been so guided. The testimony of all the commissioners, especially that of Powell, conclusively shows that they were not so governed, for, whilst they recognized the government corners yet standing in the township, they seem wholly to have disregarded the east and west distances. In re-establishing the interior corners, it appears they ran straight lines from township line to township line, depending entirely upon the course, the way least reliable for re-establishing corners or boundary lines.

Every practical surveyor knows that the lines through the townships are, in many cases, deflected lines, made so by the government surveyors. Experience does conclusively show that, in retracing the original government lines from south to north, or the contrary, there is, at almost every section corner, not only on section lines, but also on township lines, base lines and meridian lines, a deflection more or less to the east or to the west, and this can only be ascertained by reference to the original field notes, and by the proper measurement of the east and west distances, as reported in those notes.

As an illustration of the manner in which a lost corner should be re-established, we will take in this case the corners between sections three and four, nine and ten. In re-establishing this corner, it appears these commissioners started at

a government corner between sections thirty-three and thirty-four on the southern boundary of the township, and ran a straight line north to the corner between sections three and four on the northern boundary of the township. In this direct or straight line, as ran by them, they established, at a distance of four hundred chains, or five miles, from their starting point, the corner between sections three and four, nine and ten, for both Powell and Faulkner testify they paid no regard to east and west distances. By this, it is made to appear that the corner by them thus established is nearly twenty rods further west of the spot where it was claimed to have been by the adjoining land owners from the time of the original government survey down to the time of this survey.

The commissioners having thus established this corner according to distance from south to north, their further duty would have been to establish the same from east to west, and to do this they should have ran an east and west line from the corner of sections two and three, ten and eleven, to the corner between sections six and seven on the west line of the township. The distance between these corners is, as reported by the government field notes, three hundred and twenty-one (321) chains four (4) links. Had the commissioners found that their measurement corresponded with the measurement of the government surveyors, they should have established the corners according to the distances as given in the original field notes. Had there been an overplus, they should have divided the same *pro rata* between sections six and seven, five and eight, four and nine, and three and ten, but the testimony of Boggs and Dicks shows that the line for said distance fell short by sixteen links, which they claim should be divided *pro rata* between those sections, and which we think would be the proper way by which to establish the corners from east to west, being according to the distance as given by the government field notes. These field notes show that the corner of sections three and four, nine and ten, is eighty (80) chains and thirty (30) links west of the government corner yet standing,

and recognized by all parties as such, between sections two and three, ten and eleven.

The testimony of Boggs and Dicks shows that the line between sections three and ten falls short by its *pro rata* loss of four links. The true distance, then, for that corner between three and four, nine and ten, would be eighty (80) chains and twenty-six (26) links west of the corner between two and three and ten and eleven, and if the measurement from south to north corresponds with the government survey, it would be five miles north of the corner between sections thirty-three and thirty-four on the southern boundary of the township. By pursuing the course they did, the commissioners would deprive some of the appellants of property which they have occupied more than twenty years, purchased by them according to the survey made by the government many years before Powell, the principal witness for appellees, was born, and who seems to have disregarded the field notes, which should have been his guide.

We are satisfied the survey in question is not in accordance with the spirit and purpose of the act of 1869; was not made on correct principles, and to sanction it would do great injustice. These commissioners were authorized to re-establish old lines and corners, not to make new ones. In doing the latter they have exceeded their authority, and their report should not have been approved.

The decree of the circuit court is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*